Please proceed. Now, the panel has other commitments, so we have to keep all cases on our schedule today. If you want rebuttal time, please stop short of using up the ten minutes. Okay, I will watch the clock. I would like a box of minutes of rebuttal time. Yeah, just stop yourself, because the clock shows everything. Okay. I'll try to remind you if I can remember. Thank you. There are two arguments that we would like to focus on this morning on behalf of Mr. Lopez-Bazante. First, the race judicata argument, the issue about the prior proceedings, whether or not there should be second proceedings after the issue was addressed, the first proceedings. We think that it's evident in light of the recent Bravo-Pedroza case. And second, in any event, that with respect to the decision made by the immigration judge and the Board of Immigration Appeals, there are legal errors in the decision, in particular with respect to the legal concept of rehabilitation. And this Court has jurisdiction to review the decision with respect to the application of that term rehabilitation. First of all, with respect to race judicata, which, of course, generally stands for the principle that a person will not be prosecuted again a second time on the basis of conduct that was addressed in the first round of the first prosecution. The Bravo-Pedroza case indicates that courts assume that Congress will legislate with the understanding that this principle, race judicata, applies. In other words, the government will not bring a second case on the basis of the same evidence that was available the first time around. What about when there's been a change in the law in the intervening period? Well, I think the question, then, is what did Congress intend when it enacted that law? Did Congress intend to override the normal principles of race judicata? I think the analysis in St. Cyr is relevant here also. In St. Cyr, of course, the Supreme Court held that when Congress overturns a principle like race judicata, retroactivity principle, Congress – there should be a clear statement in the legislation that Congress intends to overturn that principle. If we look at what Congress enacted in 1996, the relevant provision here, the abrogated felony provision, which was enacted in Section 321 of the IROA, the Illegal Immigration Reform Law, Section 321, there are provisions there that talk about the scope of or the retroactivity of that term. I thought Congress said they wanted the new definition to apply retroactively to any case brought after that. That's correct. The term aggravated – the new definition of, quote, aggravated felony does apply retroactively to convictions before, on, or after that date. But that – as in St. Cyr, that definition doesn't tell us anything about whether Congress intended to override the retroactivity principles, race judicata, for example. That – that – the fact that that definition applies retroactively doesn't necessarily mean that Congress intended for the Immigration Service to go back and reopen old cases and apply that new definition to those actions that were already taken. In fact, if you look at Section 321C, where Congress there does address this question, well, how should that – how should this definition be applied? Should it be applied retroactively in all cases? There, Congress says that this new definition should be applied to actions taken on or after the enactment date. And so clearly, leaving off the before part, in other words, Congress indicates there that with respect to actions that have already been taken – and, of course, there was, with respect to Mr. Lopez, there was an action that had been taken against him beforehand. Congress says, well, we don't go back and reopen that case. We'll apply this new definition of aggravated felony with respect to – with respect to disqualifying provisions or with respect to actions that we're going to take against an individual. We apply that to actions taken on or after, but not necessarily actions that have already been taken before. I think that the statute at least indicates that – that res judicata should be accepted and applied. At least there's no clear statement that Congress intends to override the ordinary presumption that res judicata applies. I would also point to a related provision, Section 309. Section 321 addresses, you know, this new – substantively, this new provision and how far does it apply. There are also procedural provisions, new rules for how deportation proceedings should be handled. You issue a notice to a peer, new rules about detention while a person is going through deportation proceedings. These procedural rules – in Section 309, Congress says that those – these new procedural rules in I.I.R.A. do not apply if a person is already in deportation or exclusion proceedings. It says if a person is in deportation or exclusion proceedings as of the effective date, then these new amendments shall not apply. Again, it indicates the – a presupposition, I guess, that Congress is – does not intend these new rules to be applied retroactively to cases already – already handled or even cases pending. These new rules don't apply except with respect to future cases. Your time is running out. Why don't you address for a minute the rehabilitation issue? With respect to the rehabilitation issue, I think the immigration judge and the Board affirmed this – affirmed the immigration judge's decision. The immigration judge basically made a decision inconsistent with precedent – governing precedent decisions. The immigration judge said, okay, look, we've got to deal with this question of rehabilitation. How do we know whether this person is rehabilitated? Well, he adopted a standard that has never been used before. In order to prove rehabilitation, you've got to prove that there's almost no probability that you'll commit this offense in the future. But then he goes on to say – and this is the language the Court uses. It says the way that the Court is going to determine that is by looking at whether the testimony is consistent with the police reports. And that's just completely – so in other words, what the judge is saying, the only way that this person can show rehabilitation is by testifying consistently with the police reports. If you don't testify consistently with police reports, then you can't show rehabilitation. No, not really. It's the argument – it's an argument – I think it's an argument that the immigration judge has misapplied the legal concept – the term rehabilitation. I'm sorry? Well, there's several cases that have indicated most recently the Ramadan case and the Afridi cases hold that this Court has jurisdiction to review the application of legal concepts to facts. Yes. Yes. That's quite clear. And the Laura Louise Hernandez case as well holds the same. Well, do you think it's possible that the Board simply looked at the seriousness of this offense and just said, this is such a serious offense here, that what you've shown with respect to rehabilitation just doesn't overcome the seriousness? Well, it's not clear. I mean – Well, it's kind of a muddled decision. It might have done that. But if that's what it did – If that's what it did, then the case is over. That would be wrong, legally incorrect, because the Board has standards as to how you – Well, they make it clear in their prior precedent that you can look at the seriousness of the offense and weigh that against rehabilitation. I mean, rehabilitation is just one of the factors that the Board tells the IJs to take a look at. Right. But what – It's not dispositive. It's not dispositive. But the Court – the judge, the immigration judge here, treated it as dispositive. It said the way to determine whether or not rehabilitation has been met is whether you testify consistently. So why isn't that a discretionary issue that – on which we don't have jurisdiction? Well, none of the other – so, you know, the precedent decisions say that a person can establish rehabilitation even if he claims innocence. What you have to look at are, you know, whether his expressions of remorse, you have to look at his good – you know, whether there's a period of good conduct, how long that period is. All of those factors have to go into that. And that – in this case, the immigration judge didn't do that. He didn't follow those governing rules. If you want to do some rebuttal, we'd better stop. Thank you, Your Honor. We'll give you a minute for rebuttal. Okay. We'll add a few seconds. Thank you. Good morning, Your Honors. May it please the Court. Leslie McKay for the Respondent, Alberto Gonzales. I'll go in basically the same order. On the res judicata issue, the main question for this Court is, is jurisdiction, is the aggravated felony. And we would argue, number one, that the Court lacks jurisdiction. This is an aggravated felony under the amended definition. He doesn't dispute that. He disputes that the amended definition applies to him. It does. Under O'Reiler, we have – you know, we have jurisdiction to look at legal – legal issues. Of course, Your Honor. What he's saying, as I understand the res judicata issue, is that there is a rule of administrative res judicata, which was misapplied. And I don't think that there was. And that's a legal argument. Correct. It would be. However, the argument that he's raising simply isn't really a colorable question for this Court because, number one, the exact same issue has already been rejected in Cordes and Aragon-Aon by this Court. And, number two, Bravo – Well, that's a retroactivity issue. Correct. But then on the res judicata, Bravo-Pedroza doesn't change the result. In Bravo, what the Court was interested in was whether DHS could bring new proceedings on the basis of evidence it could have brought in the first proceedings. And what's critical about Bravo that distinguishes it from this case, in Bravo, there were three charging documents. There was an order to show cause, there was a later notice to appear, and there was a third notice to appear. So the issue in Bravo was that the DHS lost on that second notice to appear and turns around a couple of days later and lodges the third notice to appear based on evidence it could have brought during those second proceedings. Here we have one order to show cause prior to ERIRA and a notice to appear after ERIRA. The aggravated felony grounds, sexual abuse of a minor, did not exist prior to ERIRA. There's no way that DHS could have brought this aggravated felony ground prior, in those prior deportation proceedings. He was originally charged with a crime involving moral turpitude, but at the time, that ground required that the commission of the offense be within five years of entry and result in a prison sentence of a year or longer, neither of which applied. So that's why those proceedings were terminated. Years down the road, ERIRA is passed. A fundamental change in the law has occurred, and now he's removable as an aggravated felon. That's how we get into these proceedings, and that's why the res judicata argument fails, and Bravo-Pedroza doesn't change that result. But, you know, it's not necessarily a, you know, it has some plausible basis to it. It's not a completely frivolous argument. I don't think that it's frivolous. I think that it fails. I think that what the Court was most concerned with in Bravo and in Ramon Sebelveda, which is cited in Bravo, doesn't exist here. We don't have a situation where DHS is coming in. There's a significant change in the law. There is a significant change in the law, and DHS could not have, at the time he was in deportation proceedings, brought this ground of removability against him. So let me ask you, what does one have to do in a situation like this, with this kind of conviction, to show that they're rehabilitated? Well. What do you understand the law to be for the board? I understand the law to be that rehabilitation, as you mentioned, I believe, is one factor in the discretionary calculus. Of course, the 212C decision is a discretionary decision for the immigration judge as well as the board. So my understanding is that rehabilitation is a factor to be evaluated on a case-by-case basis, depending on the facts and circumstances of each case as they're presented to the immigration judge. And in that sense, Petitioner's counsel mentioned Ramadan. Ramadan is also distinguishable because Ramadan specifically excludes from its holding discretionary decisions, specifically cites 212C and discusses. Well, as I understand the argument here, and I may be wrong about this, but, you know, the board has to consider everything that the Petitioner presents, and a failure to do so would deprive him of a fair hearing. In this case, Your Honor. So what I understand they're saying is that the IJ came up with a, you know, his own definition or his own standard for what the Petitioner must show for rehabilitation, which counsel said is he must admit, cannot testify differently to anything in the police reports. And if he does, he's not shown rehabilitation. I think that it's important to view the immigration judge's comments in this case in the context of the larger decision. The decision on 212C is 12 pages long. He goes through all of the factors. At the outset, at 169 to 171 of the record, he identifies the appropriate legal standards. He talks about balancing the equities. He says at page 171 that rehabilitation is not a prerequisite. He acknowledges all of that precedent. And I think what the immigration judge was doing in this case wasn't announcing a new standard. By the time he then moves through all that testimony to the end, what he was doing was saying your crime was so serious. What you did was so serious. I consider rehabilitation to be a major factor in the balancing of the equities. Your Honor, it's the government's position that the court lacks jurisdiction, that the aggravated felony ground precludes jurisdiction under Section 242 of the Act and that the remainder of the arguments presented by Petitioner in this case don't raise a colorable legal or constitutional question. Let's assume that the aggravated felony characterization doesn't totally preclude the whole case from being considered. Even if we have jurisdiction to consider the res judicata argument on this issue about rehabilitation, isn't that clearly part of a discretionary decision about waiver on which we don't have jurisdiction? Exactly, Your Honor. I think this case presents different layers of jurisdictional issues. We kind of start at the top and move down. I'd like to get you past your first one. On the 212C issue, on the rehabilitation issue, we absolutely argue that that was part of the immigration judge's discretionary weighing of the positive and negative equities and that the court would therefore lack jurisdiction to consider. But in arriving at that ultimate discretionary decision, if the I.J. refused to follow, let's say, established board precedent or refused to consider certain evidence that was presented or would not allow the immigrant to bring in witnesses or something like that, you would agree that, you know, to the extent he asserts a constitutional claim with respect to depriving him of a fair hearing, as you work your way through to an ultimate decision, that we would have jurisdiction to review those constitutional issues. I would agree with that, Your Honor. And I would simply assert that I don't think that that's the case here. Given — and again, I think what's the most important is, you know, the comments that Petitioner focuses on that were made by the immigration judge were made on page 181 of the record, and that's 12 pages after he started his analysis. This is not an immigration judge who started at the top and said, Rehabilitation is it. This is how I determine if you're rehabilitated. I'm not paying any attention to the matter of Edwards, the matter of Moran, Jeffers Prado. This is how I do it in my court, and that's all I'm looking at. That's not what happened here. The immigration judge clearly considered all the positive equities, acknowledged that this was a very close case, a very difficult case, and I think ultimately simply determined that rehabilitation for him, in light of this case, was the factor that tipped the scales and caused him to, I guess, decline to favorably exercise his discretion. But it is ultimately a discretionary decision. Sure, at the bottom end it's a discretionary decision. I don't know if anybody recognizes that. Correct. And then I guess on the last little bit, in terms of ticking down through the jurisdictional questions on the motion to reopen again, I think that's where he starts to really raise the due process issue with respect to the motion, which he hasn't argued here, so I'm not going to get too far into it. But we would simply argue that it's really not a due process claim. It's an abuse of discretion claim, and that in any event he didn't exhaust that particular issue before the board. So jurisdictional issues kind of winnowed down. I think that's all I have. Unless the Court has further questions on any particular issue, I'm happy to submit on the briefs. Thank you. Okay. Yes, I did not mean to withdraw the due process arguments that were made in the briefs. I think my point was that the argument with respect to rehabilitation is that the immigration judge did not apply, did not follow the governing precedent. And the Court has jurisdiction to review that, to make sure that the immigration judge follows the rules of the game. And preparing for this deportation hearing, you know, counsel prepares with the understanding that the governing precedent decisions, Mendez-Morales and Aragon and Yepes-Prado, those are going to be followed. And so that – well, colorable constitutional issues are covered. But in addition, under the Real ID Act, this Court can review questions of law. And in Ramadan and other decisions. Sorry? In Hernandez, Laura Louise Hernandez case, that was specifically a discretionary decision, a discretionary adjustment of status, an allegedly discretionary decision that was made. And this Court held that the Court has jurisdiction to ensure that the governing precedents are followed as a legal matter. I think that that's quite clear under the Real ID Act, that even in the context of a discretionary decision, the judge can't throw the governing precedents out the window. Those precedents have to be followed. And they were not followed here. The immigration judge, in his decisions, said that the way, the only way that he's going to determine whether or not rehabilitation has been met is whether you testify consistently. His decision shows that's the only thing that he considered. And that's not correct. We have to bring the argument to a close because you're a minute over the extra time we gave you. I'm sorry, Your Honor. So it is proper to respond to Judge Rawlinson's question. So I appreciate you doing it. Unless Judge Pais or Judge Rawlinson have further questions, we will conclude the argument. We thank Mr. Pau and Ms. McKay for their arguments. Very helpful. Lopez-Basanti shall be submitted.
judges: Gould, Paez, Rawlinson